**ST. LOUIS COUNTY, Missouri, Elmer E. Smith and Frank J. Antonio, and Berkeley School District, Respondents (Plaintiffs),**

v.

**STATE TAX COMMISSION of Missouri, John A. Williams, Howard L. Love and J. Ralph Hutchison, and Ozark Air Lines, Inc., Trans World Airlines, Inc., American Airlines, Inc., Central Air Lines, Inc., Braniff Airways, Inc., Eastern Air Lines, Inc., and Delta Air Lines, Inc., Appellants (Defendants),**

and

**City of St. Louis, Appellant (Intervenor).**

Nos. 51775, 51787–51792.

Supreme Court of Missouri,
En Banc.

Sept. 12, 1966.

Rehearing Denied Oct. 10, 1966.

Joseph B. Moore, St. Louis County Counselor, Thomas W. Wehrle, Deputy County Counselor, Patrick Fiandaca, Asst. County Counselor, Clayton, for respondents, St. Louis County, Missouri, Elmer E. Smith, Frank J. Antonio.

Howard Elliott, Edward D. Weakley, St. Louis, for respondent, Berkeley School District.

Paul L. Bradshaw, Neale, Newman, Bradshaw, Freeman & Neale, Springfield, Dick H. Woods, John K. Bestor, George E. Gibson, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Thomas F. McGuire, City Counselor, St. Louis, Arnold Brannock, State Tax Commission of Missouri, Jefferson City, for appellants.

Norman H. Anderson, Atty. Gen., John H. Denman, Asst. Atty. Gen., Jefferson City, amicus curiae, for defendants-appellants.

George S. Hecker, Shepley, Kroeger, Fisse & Shepley, St. Louis, for Remmert-Werner, Inc., amicus curiae.

Kenneth S. F. Teasdale, Armstrong, Teasdale, Roos, Kramer & Vaughan, St. Louis, for Interstate Airmotive, Inc., amicus curiae.

HENLEY, Judge.

This opinion determines appeals in seven cases [1] in each of which the defendants and the City of St. Louis, as intervenor, appeal from a judgment of the Circuit Court of the County of St. Louis setting aside findings and an order of the State Tax Commission pertaining to the assessment for tax purposes of a leasehold interest of a defendant airline in real estate owned by the City.

The plaintiffs-respondents will be referred to as follows: St. Louis County, Missouri, the County; Frank J. Antonio, the assessor of St. Louis County, as the Assessor; Berkeley School District, the School District. The defendants-appellants will be referred to as follows: State Tax Commission of Missouri, John A. Williams, Howard L. Love and J. Ralph Hutchison, as the Commission; Ozark Air Lines, Inc., Trans World Airlines, Inc., American Air Lines, Inc., Central Air Lines, Inc., Braniff Airways, Inc., Eastern Air Lines, Inc., and Delta Air Lines, Inc., collectively as the Airlines. The inter-

1. No. 51,775—St. Louis County, Missouri, Elmer E. Smith and Frank J. Antonio; and Berkeley School District, Plaintiffs-Respondents, vs. The State Tax Commission of Missouri, John A. Williams, Howard L. Love and J. Ralph Hutchison; and Ozark Air Lines, Inc., Defendants-Appellants, and City of St. Louis, Intervenor-Appellant.
No. 51,787—St. Louis County, Missouri, Elmer E. Smith and Frank J. Antonio; and Berkeley School District, Plaintiffs-Respondents, vs. The State Tax Commission of Missouri, John A. Williams, Howard L. Love and J. Ralph Hutchison; and Trans World Airlines, Inc., Defendants-Appellants, and City of St. Louis, Intevenor-Appellant.
No. 51,788—St. Louis County, Missouri, Elmer E. Smith and Frank J. Antonio; and Berkeley School District, Plaintiffs-Respondents, vs. The State Tax Commission of Missouri, John A. Williams, Howard L. Love and J. Ralph Hutchison; and American Airlines, Inc., Defendants-Appellants, and City of St. Louis, Intervenor-Appellant.
No. 51,789—St. Louis County, Missouri, Elmer E. Smith and Frank J. Antonio; and Berkeley School District, Plaintiffs-Respondents, vs. State Tax Commission of Missouri, John A. Williams, Howard

L. Love and J. Ralph Hutchison; and Central Air Lines, Inc., Defendants-Appellants, and City of St. Louis, Intervenor-Appellant.
No. 51,790—St. Louis County, Missouri, Elmer E. Smith and Frank J. Antonio; and Berkeley School District, Plaintiffs-Respondents, vs. State Tax Commission of Missouri, John A. Williams, Howard L. Love and J. Ralph Hutchison; and Braniff Airways, Inc., Defendants-Appellants, and City of St. Louis, Intervenor-Appellant.
No. 51,791—St. Louis County, Missouri, Elmer E. Smith and Frank J. Antonio; and Berkeley School District, Plaintiffs-Respondents, vs. State Tax Commission of Missouri, John A. Williams, Howard L. Love and J. Ralph Hutchison; and Eastern Air Lines, Inc., Defendants-Appellants, and City of St. Louis, Intervenor-Appellant.
No. 51,792—St. Louis County, Missouri, Elmer E. Smith and Frank J. Antonio; and Berkeley School District, Plaintiffs-Respondents, vs. The State Tax Commission of Missouri, John A. Williams, Howard L. Love and J. Ralph Hutchison; and Delta Air Lines, Inc., Defendants-Appellants, and City of St. Louis, Intervenor-Appellant.

venor-appellant, City of St. Louis, will be referred to as the City.

The real estate involved is Lambert-St. Louis Municipal Airport, hereinafter referred to as the Airport, located in St. Louis County and owned and operated by the City. On January 1, 1963, each of the Airlines held a leasehold interest in parts of the Airport. The assessments involved are those made by the Assessor for the tax year 1963 on the leasehold interest of each Airline.

Each Airline and the City appealed the respective assessments to the St. Louis County Board of Equalization which, after a hearing, denied the appeals. Thereafter, each Airline and the City filed a joint appeal to the Commission where the seven appeals were consolidated for hearing. After hearing evidence, the Commission notified the parties by letter that it had found that the leasehold interests had no value as of January 1, 1963, and that the assessment should be "no value or assessment of zero." Within a few days after this letter the Commission made and entered findings of fact, conclusions of law and decision in each of the seven cases. Thereafter, the County, the School District and other plaintiffs filed petitions for review. The cases were submitted to the trial court on these petitions, the consolidated record made before the Commission, briefs and oral arguments of counsel. Thereafter, the trial court made and entered its findings and judgment in each case wherein it reversed and set aside the findings and decision of the Commission, and sustained the valuation and assessment of the Assessor and County Board of Equalization. After an unavailing motion to amend the judgment or, in the alternative, for a new trial, a notice of appeal to this court was filed in each case by the Commission, the airline involved and the City. On motion of all appellants, we ordered the cases consolidated for briefing, argument and hearing before the court en banc. Common questions of fact and law are involved. One opinion will suffice.

■ This court has jurisdiction for the reason, among others, that the County of St. Louis is a party in each of the appeals. Article V, § 3, Constitution of Missouri, V.A.M.S.

The findings, conclusions of law and decision of the Commission were, in summary: (1) that the formula or method used by the Assessor in assessing the value of the leasehold interests was improper and erroneous and resulted in assessing the value of the fee to the Airlines; (2) that as of January 1, 1963, the contractual rental was substantially in excess of the fair market value rental for comparable space in the St. Louis metropolitan area and at other comparable airports; (3) that the greater weight of the credible evidence was that as of the assessment date the contractual rental was substantially in excess of the fair market value rental; (4) that the leasehold interests of the Airlines on the assessment date were of no value, that the fair and proper value for tax assessment purposes was "zero or no value," and that the assessments by the Assessor were unfair, unlawful, improper and arbitrary; (5) that a lessee's interest in a leasehold is real property within the meaning of the law and as such must be assessed at its true value in money, or at such percentage thereof as may be fixed by law, if such leasehold interest in fact has value; (6) that, therefore, the assessments of the Assessor should be, and are, reversed and set aside. We do not reach or rule the interesting question posed in (5) above. The trial court, in a twenty-seven page memorandum setting out its findings and judgment, reversed and set aside the decision of the Commission (except that finding and conclusion of the Commission stated in (5) immediately above) and sustained the assessed valuation of the Assessor and County Board of Equalization. We reverse the judgment of the trial court and remand the cases.

The leases from the City to each of the Airlines conveyed space to be occupied by each, either exclusively or in common with

one another, within and adjacent to certain buildings at the Airport, primarily the Terminal building and cargo buildings and, in the case of TWA, a hangar building. All leases expired July 31, 1965, and none contained a right of renewal beyond that date. Ozark also had two other leases for space at the Airport not related to space leased by any of the other six. One of these was for office space in what is called the "old" Terminal building; the other for space in a metal hangar building with adjoining office space, and a concrete ramp area. The latter leases provided for their termination (and vacation of those premises by Ozark) upon completion by the City of new facilities to be occupied by Ozark in the fall of 1964. All of the lease agreements limited the use which the Airlines could make of the premises solely to the conduct of air transportation business and functions incident thereto, and precluded the lessees from assigning the lease (other than to a successor) or subletting the premises (other than to an auxiliary business) without written permission of the lessor. In addition to the space leased in the buildings above mentioned, the Airlines had license to use in common with all other aircraft the landing strips, runways, taxi-ways, runway lights, public address and P.A.X. telephone systems and similar facilities for which they paid "activity or landing fees" as distinguished from rent. In addition to the rentals, each Airline also paid its own electricity, janitor service and similar expenses.

At the request of the Assessor the Airlines furnished him with the square footage of space leased from the City, the annual rents paid therefor, and the expiration date of their leases. The rentals paid for the year 1962 were as follows:

| | |
|---|---|
| Ozark | $ 97,483.86 |
| TWA | 191,670.50 |
| American | 80,691.00 |
| Central | 10,657.00 |
| Braniff | 23,690.01 |
| Eastern | 43,334.25 |
| Delta | 40,246.69 |

Thereafter the Assessor notified the Airlines that the assessed valuation of their respective leasehold interests in the Airport for tax purposes for the year 1963 was as follows:

| | |
|---|---|
| Ozark | $ 259,980.00 |
| TWA | 506,650.00 |
| American | 209,830.00 |
| Central | 23,300.00 |
| Braniff | 63,170.00 |
| Eastern | 109,860.00 |
| Delta | 48,420.00 |

The formula used by the Assessor to determine the valuation to be assessed to each leasehold was set out in a letter from the Assessor, as follows:

"The average monthly rents paid by the lessee multiplied by a factor of ninety-six (96), in our opinion, determines the value of the leased property. This value is then reduced to one-third ($\frac{1}{3}$), which in effect becomes the assessed value.

"In the determination of these leased property values, 1962 rents were used * * *.

"In the determination of the leased property values of the airlines, the cost of landing fees, public address system, P.A.X. telephone system, fuel oil, and electricity are excluded."

In other words, in assessing the leaseholds at one-third of what he determined to be true value, the Assessor took the average monthly rent paid by each Airline, multiplied that by the factor of ninety-six and divided the product by three. The factor of ninety-six selected by the Assessor represents a remaining lease term of eight years. As of the assessment date the remaining life of the lease terms of the Airlines was two years and seven months with the exception of the two additional leases of Ozark which expired in less than two years.

Appellants contend in points two and three of their brief that the court erred: (1) in holding that the findings and decision of the Commission were not supported by competent and substantial evidence upon the whole record, and (2) in reviewing the case as if it were a trial de novo and in substituting its findings and conclusions for those of the Commission.

■ The scope of review by the trial court, and by this court, of the findings and decision of the State Tax Commission where, as here, a hearing was required by law and was held, extends to a determination of whether the findings and decision are supported by competent and substantial evidence upon the whole record. Article V, § 22, Constitution of Missouri; § 536.140, paragraph 2, subparagraph (3), RSMo 1959, V.A.M.S.; Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647, 649 [1]. In Wood, supra, l. c. 649 [3], this court, en banc, said: "This does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence. Of course, the reviewing court should adhere to the rule of deference to findings, involving credibility of witnesses, made by those before whom the witnesses gave oral testimony." Neither the trial court nor this court may substitute its discretion for discretion vested in the Commission, and may not set aside findings and decisions of the Commission unless such are unsupported by competent and substantial evidence upon the whole record, or for other reasons set out in § 536.140. State ex. rel. Kahler v. State Tax Commission, Mo., 393 S.W.2d 460, 464 [4]; Stein v. State Tax Commission, Mo., 379 S.W.2d 495, 498 [3]; Peck's Products Company v. Bannister, Mo., 362 S.W.2d 596, 599 [2]; Drey v. State Tax Commission, Mo., 345 S.W.2d 228, 234 [2]. The scope of review has been referred to as limited. State ex rel. Horn et al., v. Randall, et al., Mo.App., 275 S.W.2d 758, 761.

■ In determining the questions before us we must follow the above principles and heed "the principle that the record be viewed in the light most favorable to the finding [and decision] of the Commission, and consider the favorable inferences which the Commission had the right to draw from the evidence before it, * * *." State ex rel. Bond v. Simmons, et al., Mo.App., 299 S.W.2d 540, 545 [5]; Gaddy v. State Board of Registration for Healing Arts, Mo.App., 397 S.W.2d 347, 350 [2].

Mr. Frank J. Antonio, the Assessor, testified that the first leasehold interests his office had assessed for tax purposes were those involving lessees at the Airport; that based on his experience, and knowledge as to how long each of the lessees had been tenants of the Airport, he considered that the value of a leasehold property should be determined by multiplying the average annual rental paid by eight years without regard to the term or actual life remaining in the lease, because eight years had been determined by him to be the life expectancy of a lease; that eight years should be used as the multiplier on commercial properties regardless of whether the tenancy was month to month or for a three-year term. Upon inquiry as to whether the use of eight as the multiplier would in fact produce the value of the interest of the owner of the fee, he replied that "ordinarily" this "rule of thumb method" would produce that value.

Mr. James N. Foster, Supervisor of the commercial department of the Assessor's office, corroborated the testimony of the Assessor, but went into more detail as to the method used to assess the leasehold interests. He further testified that he did not know of any other leasehold interests in commercial property in St.

Louis County assessed by use of the same formula as that used in assessing the value of leasehold interests at the Airport.

Mr. William J. Randall of St. Louis testified before the Commission on behalf of the Airlines. We will not attempt to go into the details of his qualifications as an appraiser or into the details of his very extensive testimony pertaining to the value of the leasehold interests and how he reached values of zero. It is sufficient to say that he apparently was well qualified and was recognized as an expert in the field of real estate appraisal, having been employed in more than thirty states as an appraiser, and as a consultant and appraiser for airports in Detroit, Canton, Ohio, Tulsa, Minneapolis, and Louisville, as well as St. Louis. He taught an advanced course in real estate appraisal at Washington University and participated in preparation of the real estate assessment manual for St. Louis County and the Commission's manual. He had been in charge of a reassessment program of the County and St. Charles County for the purpose of equalization of valuations, and had served as senior appraiser for, or had assisted in, reassessment programs of Allentown, Pennsylvania; Bradford, Connecticut; Ithaca and Rochester, New York; and Memphis, Tennessee. He had done real estate appraisal work for both the County and the State Highway Commission in connection with condemnation actions.

In preparation for his determination of the value of the leasehold interests, Mr. Randall: (1) examined the leases and inspected the space occupied exclusively and nonexclusively by the Airlines; (2) classified the various types of space occupied under the leases, that is, Terminal building space, and office, cargo, hangar and shop space and compared the rental paid for office, cargo or warehouse, and shop space with the fair market rental value of like or similar space in St. Louis County and the City of St. Louis; (3) made an investigation and study of the space, facilities, condition, and rentals paid by the Airlines at ten other comparable airports and compared them with the space, facilities and condition of the property leased at the Airport and with the rentals paid by the Airlines to the City. Of the ten airports chosen for this study and comparison, five had enplanements (i. e., passengers boarding an airplane for purposes of travel) next greater than those at Lambert-St. Louis and five had the next fewer enplanements, according to the latest official publication of the Federal Aviation Agency.

Based on the above information acquired over a period of several months and his experience, he expressed an opinion as to the fair market rental value of the space occupied by the Airlines at the Airport, breaking those values down for types of space, i. e., Terminal building, office, hangar, cargo, etc., exclusive and nonexclusive. We will not further encumber this opinion with the details as to those values, except to say that he ascribed a fair market rental value of $4.10 per square foot per year to both exclusive and nonexclusive space in the Terminal building. The rental paid by the Airlines for such space was $4.75 per square foot per year.

Mr. Randall defined the value of a leasehold interest in real estate as the present worth of the rental saving where the contractual rent to be paid is less than the fair market value of the use and occupancy of the leased premises at the time of appraisal; that is, where the fair market rental is higher than the contractual rental there is a rental saving, the value of which is determined by capitalizing the net annual rental saving over the remaining term of the lease. He further testified that an important factor in determining the value of a leasehold interest is the remaining life of the lease; that this factor, as well as restrictions and limitations on the lessee, affect the marketability of a lease; that a long term lease is relatively marketable both from

the standpoint of the lessee and the lessor because it has the characteristics of an annuity; that a lease with a short remaining life is not likely to be marketable and its market value, if any, from a practical standpoint, is less than what rental savings would show it to be worth.

His opinion was that the leasehold interests of the Airlines had no value as of January 1, 1963, because the known contractual rental was greater than the fair market rental. The following table shows the known contractual rental, reflects in summary all the factors considered by him in arriving at the fair market rental of all the several types or units of space occupied by each of the Airlines, and expresses his opinion as to the value of each leasehold interest.

| Airline | Total Actual (contractual) rental | Total ascribed (fair market) rental | Value of leasehold interest |
|---|---|---|---|
| Ozark | $ 97,483.86 | $ 91,898.00 | –0– |
| TWA | 191,670.50 | 185,128.00 | –0– |
| American | 80,691.00 | 77,645.00 | –0– |
| Central | 10,657.00 | 9,221.00 | –0– |
| Braniff | 23,690.01 | 20,447.00 | –0– |
| Eastern | 43,334.25 | 41,613.00 | –0– |
| Delta | 40,246.69 | 34,391.00 | –0– |

Mr. Theodore Martin, apparently a well-qualified real estate appraiser with several years' experience, testified on behalf of the plaintiffs-respondents that the method of determining the value of leasehold interests used by Mr. Randall properly should not be used in determining the value of leasehold interests at an airport, primarily because there is not a free and open market for rental space at airports. He was of the opinion that the leasehold interest of each of the Airlines had a fair market rental value of $7.00 per square foot per year. To determine the present value of the leasehold interests he would multiply the square feet leased by the Airline at the Terminal building by $2.25 (the difference between the fair rental of $7.00 and the contractual rental of $4.75) and that product by ten. The factor of ten was selected by him on the premise that, considering past history, the Airlines would likely remain as tenants of the airport for another fifteen years. He said that the multiplier of ten would produce the present discounted value of a fifteen-year term.

He arrived at the annual rental of $7.00 per square foot in the Terminal building by taking the depreciated cost of the building and adding to that the value of 300 acres (the Airport comprises 1,700 acres) to obtain a present value of $10,500,000 for the whole facility; he divided this by the 150,000 square feet in the Terminal building to arrive at a $70.00 per square foot value for the building. Assuming that the City was entitled to an 8% return on this $70.00 per square foot investment, he produced the figure of $5.60 per square foot to which he added $1.40 for depreciation for the total of $7.00 per square foot per year. His opinion was that the value of the leasehold interest of each of the Airlines was equal to or in excess of the assessment made by the Assessor.

Mr. Victor Hallauer, a real estate appraiser with about thirty years' experience, also testified on behalf of plaintiffs-respondents. He used the same method of determining the fair rental value as that used by Mr. Martin, but arrived at a fair rental value of $6.79 per square foot per

year. He used the same multiplier of ten based on a remaining term of fifteen years. His opinion was that the value of the leasehold interests was equal to or in excess of their assessed values.

■ We hold that the findings and decision of the Commission as to the values of the leasehold interests of the Airlines for tax assessment purposes as of January 1, 1963, are supported by competent and substantial evidence upon the whole record.

■ Regardless of the method used by the Assessor for determining the fair market value rental of the leasehold interests, whether it be by use of the rentals paid for the year 1962, or by use of the method used by Messrs. Martin and Hallauer, the fact remains that the assessments are the result of the use of a remaining lease term of eight years as a multiplier when the evidence was that the leases generally expired in two years and seven months with no right to renew. His use of the average monthly rentals paid in 1962 multiplied by ninety-six months to determine the value of the leasehold interests for assessment purposes is not in accord with the method for determining the value of a leasehold approved by this court in Land Clearance for Redevelopment Corporation v. Doernhoefer, et al., Mo., 389 S.W.2d 780, 784 [2, 3], particularly as to the multiplier used (the assumed remaining life of the leases). The same fallacy exists in the results reached by witnesses Martin and Hallauer for both used a multiplier of ten years, which figure they said would, as a multiplier, produce the present discounted value of a lease having a remaining term of fifteen years. On the contrary the formula used by the witness Randall is in accord with the approved method. In Doernhoefer, supra, l. c. 784, the court said: " * * * the value of the leasehold should be determined from the testimony of qualified expert witnesses as that value which a buyer under no com-

pulsion to purchase the tenancy would pay to a seller under no compulsion to sell, taking into consideration the period of the lease yet to run, including the unexercised right of renewal, the favorable and unfavorable factors of the leasehold estate, the location, type and construction of the building, the business of the tenant, comparable properties in similar neighborhoods, present market conditions and future market trends, and all other material factors that would enter into the determination of the reasonable market value of the property. The bonus value, sometimes referred to as the leasehold savings or profit, is the difference between the economic rental and the contract rental. The economic rental is the actual market value of the use and occupancy."; and at l. c. 788, "The majority of the courts have ruled that the fair and reasonable market value of the balance of the demised term is the full amount of the difference between the fair rental value of the leased premises for the unexpired term and the rent reserved in the lease." Also see: Annotation, 3 A.L.R.2d 286, 292; Metropolitan Building Co. v. King County, 62 Wash. 409, 113 P. 1114; Philadelphia, W. & B. R. Co. v. Appeal Tax Court, 50 Md. 397; Edmund Realty Co. v. Walmer Bldg. Co., 8 Cir., 123 F.2d 54; United States v. Petty Motor Company, 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729. The Assessor and both Martin and Hallauer explained that their choice of the 8 and 10-year multipliers was based on the assumption that the Airlines would remain tenants of the City for such length of time or longer, which may or may not be a reasonable assumption. But, assuming for the purpose of discussion only that it would be proper to use these figures as multipliers, there are, obviously, fallacies in other factors they have used in connection with their assumed projected lease terms: they have assumed that the depreciated cost of the Terminal building and the rents to be paid by the Airlines would remain the

same. Neither of the latter assumptions is supported by evidence, and common experience dictates that the contrary would likely be true should the Airlines and City renew the leases. Under these circumstances the Commission, in its discretion, properly could disregard the opinions of Martin and Hallauer, reject the assessment of the Assessor as unlawful, improper and arbitrary, and accept the opinion of the witness for the Airlines in determining the value of the leasehold interests. May Department Stores Co. v. State Tax Commission, Mo., 308 S.W.2d 748, 761; Cupples-Hesse Corporation v. State Tax Commission, Mo., 329 S.W.2d 696, 701; Koplar v. State Tax Commission, Mo., 321 S.W.2d 686, 694. And, the rebuttable presumption of fact that the assessments are correct disappeared when the Airlines and City produced evidence that the Assessor used the contract rental paid multiplied by a term longer than the remaining life of the leases to produce the assessed value. Koplar v. State Tax Commission, supra; State ex rel. Kahler v. State Tax Commission, supra.

Respondents have moved to dismiss points I, II and III of appellants' brief for the reasons that they fail to comply with Civil Rule 83.05(e), V.A.M.R., in that they are abstract statements of law and do not briefly and concisely state why the trial court was wrong. Point I only is a mere abstract statement of law, but it is a prologue to and introduces the reasons why in points II and III it is claimed that the court erred. It is upon these two points that the case is decided. The motion is without merit and is overruled.

The judgment in each of the above numbered cases is reversed and the causes remanded to the trial court with directions that it enter judgments in conformance with this opinion.

All concur.