**OLD FORTRESS, INC. and James Salvatore Duardi, Plaintiffs-Appellants,**

v.

**Orson F. MYERS, Defendant-Respondent.**

**No. 25318.**

Kansas City Court of Appeals, Missouri.

April 6, 1970.

Galen Knowlton, Michael J. Drape, Knowlton & Drape, Kansas City, for plaintiffs-appellants.

Herbert C. Hoffman, City Counselor, Rex G. Bostwick, Asst. City Counselor, Kansas City, for defendant-respondent.

SHANGLER, Presiding Judge.

Defendant, Orson F. Myers, Director of the Department of Liquor Control of Kansas City, Missouri, suspended the liquor permit of plaintiff Old Fortress, Inc. and that of its employee and managing officer, plaintiff James Salvatore Duardi, each for a period of seven days. Although the record does not explicitly indicate it, the permit seems to have been for the sale of liquor by the drink. Each plaintiff had been charged with, and upon a hearing been found guilty of having violated Sec. 4.140–(a)–(8), Revised Ordinances of Kansas City, Missouri, which provides:

> "No person holding a permit under this chapter shall allow upon the premises covered by said permit * * * any gambling of any kind or character for money, trade checks, prizes, merchandise or any other consideration."

Plaintiffs sought and had judicial review of the administrative proceedings by Petition for Review under the Administrative Procedure and Review Act, Chapter 536, V.A.M.S., 1959; Civil Rules 100.03 et seq., V.A.M.R. On this appeal, plaintiffs challenge the circuit court's affirmance of the Director's orders of suspension as not supported by competent and substantial evidence upon the whole record.

The episode which gave rise to the charges against the plaintiffs was described in evidence by Thomas Six, special investigator for the Kansas City, Missouri, Department of Liquor Control. As his was

the only testimony relating to the alleged infractions (apart from Duardi's denial that he had any knowledge of the incidents related), the validity of the Director's orders must derive its support, if at all, from such evidence.

On February 8, 1967, at about 11:45 P.M., Six, in the company of a young lady, entered the Old Fortress tavern, sat down at a table and ordered a drink. (We make no further reference to his companion, as she neither testified at the administrative hearing nor was referred to again in the testimony.) There he remained until the tavern's closing at 1:30 A.M. During all that time, there were on an average from twelve to fifteen patrons in the tavern at any given time. Of this number, two, besides Six himself, sat at tables. The rest were seated at the bar. Plaintiff Duardi tended bar and, as it appears he was the only one then working, served the patrons at the tables, as well.

Six had seated himself with his back to the east wall. From that coign of vantage, he enjoyed an unobstructed view of a pool table some thirty feet in front of him. About eight feet beyond the pool table, also directly facing Six, was the bar which extended along the west wall.

Upon entering the tavern, Six noticed two men at the pool table playing "eight ball". At the conclusion of that game, the losing player handed the winner a five dollar bill. Three succeeding games were concluded in the same fashion. In each instance, the loser paid the winner five dollars and, in each instance, payment was made at the table. Although two additional games were played thereafter, no money was exchanged consequent to them. Six could descry the denominations of the bills which passed, for although his table was dimly lit, the pool table, itself, was well illuminated.

As closing time approached, Six witnessed this conversation between "an elderly man" and the "man who had been winning".

Elderly man: "I will play the winner for the champion's cup."

Winning man: "We're playing for five."

Elderly man: "You mean five dollars?"

Winning Man: "Yes."

Elderly man: "I am just a sportsman."

Six also recounted other remarks made about the table (although he did not fix them in point of time or sequence), such as, "I wish I could afford to play" and "That was a five dollar shot". Although we assume Six was seated at the east wall throughout these verbal exchanges, there is no indication where the authors of any of these statements were located at the time they were made with relation to Duardi or any other identifiable person. These events, and the others we describe, were accompanied by whatever sounds were emitting from a juke box which was apparently playing, as well as by the usual murmuration of bar-room conversation.

During all this time, plaintiff Duardi was attending to his duties, "moving about the premises" and tending bar. On the one occasion when he put an intoxicated man off the premises, Duardi passed by the pool table. He was not at or near that table, however, when the exchanges of money took place, although "(h)e was on the patron's side of the bar one time when there was a pay-off". Mr. Duardi, himself, testified that he knew nothing about gambling on the premises on that date, nor was he informed of it.

On this evidence, the Director found that plaintiffs had infracted the cited ordinance by having "allow(ed)" gambling on the permitted premises. Plaintiffs do not dispute that the activity we have described constitutes "gambling * * * for money" within the ordinance but contend that there was no substantial proof that plaintiffs "allowed" it.

■ At the outset, we must dispel a misconception which plaintiffs seem to en-

tertain concerning the appellate function in the review of the findings and decisions of an administrative agency entered pursuant to a hearing required by law. In such cases, the scope of our review, as well as that of the circuit court, is to determine if the administrative findings and decisions are supported by competent and substantial evidence upon the whole record. St. Louis County v. State Tax Commission, Mo., 406 S.W.2d 644, 649 [2–4]; State ex rel. Favazza v. Ketchum, Mo., 367 S.W.2d 542 [2, 3]. In their Petition for Review, however, plaintiffs contend that Six could not have seen nor heard that to which he testified because of the thirty feet separating him from the wagering pool players and also because of the prevailing physical conditions. And, although plaintiffs couch this contention in terms of the lack of "probative value" of such evidence, it is obvious that they are actually asserting that Six' evidence was not credible and therefore should not have been taken into account by the Director. The Director of Liquor Control, not this court or the circuit court, is the fact finding tribunal. State ex rel. Chestnut Inn, Inc. v. Johnson, Mo.App., 297 S.W.2d 576, 577 [1]. The assessment of the credibility of witnesses is implicit in the fact finding process. In such an administrative review, we defer to findings, involving credibility of witnesses, made by those before whom the witnesses gave oral testimony. Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647, 649 [1–5]; McCallister v. Priest, Mo., 422 S. W.2d 650, 658 [7]. Whether the acuity of Six' visual and aural senses was such as to have enabled him to hear and see what he claimed to have heard and seen was a matter of credibility for the Director's determination.

■ The essential question to be determined on this appeal is whether there is competent and substantial evidence upon the whole record that plaintiffs allowed gambling on the permitted premises. The word "allow" is not a technical term. Giffin v. Petree, 226 Mo.App. 718, 46 S.W.2d 609

(concurring opinion by Bland, J., at 618 [6]). It is equivalent in meaning to "acquiesce" and always implies knowledge or consent. 3 C.J.S. Allow p. 888; Words and Phrases, Vol. 3, Permanent Edition (Subheading "Knowledge implied", pp. 349–350). That is the meaning to be given "allow" within the context of the ordinance under which plaintiffs are charged. The Director's findings that plaintiffs allowed gambling on the permitted premises and the consequent suspensions may stand, therefore, only if there is competent and substantial evidence upon the whole record that Duardi knew of the gambling, but nonetheless acquiesced in it or consented to it.

■ The question becomes, upon what substantial evidence can it be said that Duardi came to the knowledge of the gambling? Certainly, there was no direct evidence that Duardi was told of the gambling, nor saw it, nor heard the wagering language described by Six. The fact of knowledge, however, may be proven by circumstantial evidence. State on inf. of McKittrick v. Graves, 346 Mo. 990, 144 S.W.2d 91, 95 [5]; Herrman v. Daffin, Mo.App., 302 S.W.2d 313, 316. "Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist." 31A C.J.S. Evidence p. 440; Harrison v. Harrison, Mo.App., 417 S.W.2d 39, 46 [8–10]. The circumstances, however, must point to the inference drawn with such a degree of certainty as to make it "reasonable and probable and must rise above the stature of guesswork, speculation or surmise". Green v. Ralston Purina Company, Mo., 376 S.W.2d 119, 124 [1–4]. In determining the sufficiency of the evidence, of course, we consider it in that light most favorable to the Director's findings, together with all reasonable inferences supporting them. Baker & Theodore, Inc. v. Quinn, Mo.App., 400 S.W.2d 477, 480 [4–8]; Dittmeier v. Missouri Real Estate Commission, Mo.App., 237 S.W.2d 201, 203 [1–3]. Even so considered, however, we conclude that the facts offered as circumstantial evi-

dence do not afford a basis for a reasonable inference of Duardi's knowledge of the gambling on the permitted premises.

As the mere presence of the pool table and its normal use by the patrons were not forbidden, they were not circumstances from which Duardi's knowledge of gambling could be inferred. As to the "pay-offs", there was evidence of four of them, after each of the first four games of "eight-ball". Each payment was made at the pool table. The evidence does not disclose how long the money was in view, although it seems reasonable to assume that the payments were accomplished with fleeting manual maneuvers. Nor do we know where Duardi was on each of those occasions, except that he was "on the patron's side of the bar" one time when there was a "pay-off". But we are not informed as to what he was then doing within those eight feet separating the bar and pool table, whether his back was to the wagerers, or whether their backs were to him. The only other time Duardi was near the pool table was when he put an intoxicated patron off the premises. But no exchange of money took place then. In short, there was no evidence from which it could be inferred, with a degree of certainty rising above conjecture and speculation, that Duardi saw the gambling and thus knew of it.

As to the utterances, "We're playing for five" and the like, the evidence gives no inkling as to where Duardi was when they were made or, for that matter, except conjecturally, where anyone else was (except for Six, who seems to have remained against the east wall throughout). We neither know, nor can reasonably infer, how loud these statements were, nor how far they carried. Even if we discount the juke box sounds and the drone of the conversation of fifteen patrons, can we make out evidence of sufficient substance from which Duardi's perception of the words spoken—and hence his knowledge of gambling on the premises—can be inferred. To this, we add the evidence that Duardi, as the only employee on duty was preoccupied serving his customers, for the most part from behind the bar, but also at the tables.

To find the fact of Duardi's knowledge of the gambling from circumstantial evidence so vague and uncertain is to draw an inference that amounts to scarcely more than a possibility that the fact of Duardi's knowledge of the gambling might exist. "However, proof by circumstantial evidence must establish the desired inference with such certainty as to cause it to be the more reasonable and probable of the conclusions to be drawn." Willoughby v. Safeway Stores, Inc., Mo. App., 397 S.W.2d 748, 751 [3, 4]; Clymer v. Tennison, Mo.App., 384 S.W.2d 829, 834. Six' evidence is no more probative of Duardi's knowledge of the gambling than his lack of it. Neither inference is more reasonable and probable than the other. Evidence is substantial if it has probative force upon the issues and could reasonably lead to the belief of the material facts. Davis v. State Department of Public Health & Welfare, Mo.App., 274 S.W.2d 615, 617–618 [6, 7]; Baker & Theodore, Inc. v. Quinn, supra, 400 S.W.2d p. 480; Berkemeier v. Reller, 317 Mo. 614, 296 S.W. 739, 752 [15–17]. We therefore conclude that the Director's findings and orders of suspension are not supported by competent and substantial evidence that Duardi allowed gambling on the permitted premises.

The judgment of the circuit court is reversed and remanded and the circuit court is directed to set aside the orders of suspension entered against plaintiffs by the Director of Liquor Control.

All concur.