**Kenneth J. GREENING, Mary Sue Greening, and Ford Lane Executive Center, Inc., Plaintiffs-Appellants,**

v.

**Marvin KLAMEN and Klamen, Summers & Compton, a Partnership, Defendants-Respondents.**

No. 43833.

Missouri Court of Appeals, Eastern District, Division Two.

May 10, 1983.

---

Mark Belz, Clayton, for plaintiffs-appellants.

Donald L. James, David R. Buchanan, Edward S. Meyer, St. Louis, for defendants-respondents.

DOWD, Judge.

Plaintiffs-appellants, Kenneth and Mary Sue Greening, (hereinafter the Greenings) and Ford Lane Executive Center, Inc. (hereinafter FLEC) instituted this suit in eight counts against defendants Klamen, Summers & Compton, a firm organized for the practice of law, and Marvin Klamen individually, alleging four counts of breach of contract, two counts of legal malpractice and two counts of libel. Defendants moved jointly to dismiss this action; the trial court sustained the motion and ordered that the suit be dismissed. Plaintiffs appeal from said order. We affirm the trial court's ruling as to dismissal of all counts except as to Counts I and III, and find that giving plaintiffs' petition the benefit of every reasonable intendment, Counts I and III state a cause of action.

The facts are as follows: On October 8, 1977 the Greenings, who were FLEC's sole stockholders entered into an agreement with Klamen whereby he would represent both their personal interests and FLEC's corporate interests in bankruptcy reorganization proceedings then pending. Pursuant to this agreement, the Greenings individually paid Klamen a $4,000 retainer fee and further agreed that Klamen would be paid on an hourly basis with the total amount of legal costs not to exceed the sum of $20,000.

On December 7, 1977, Klamen informed the Greenings that his continued legal representation was contingent upon their acceptance of a new fee arrangement. The Greenings declined this new proposal and in January of 1978 Klamen withdrew as counsel for both FLEC and the Greenings.

The Greenings and FLEC further alleged in their petition that on December 27, 1977 Klamen sent a letter to attorneys involved in the bankruptcy proceeding, the bankruptcy judge, the trustee and to two potential reorganization investors who were not parties to the suit, wherein he claimed the Greenings were attempting to negotiate a reorganization plan for FLEC outside of his office and that the Greenings were guilty of vacillation and indecision in their statements to him.

Defendants moved to dismiss the petition on the grounds that it failed to state a claim upon which relief may be granted and that both the Greenings individually and FLEC in its corporate capacity did not have standing to sue. Without affording this court the benefit of its legal reasoning the trial court summarily dismissed all eight counts of the petition.

It is well settled that on a motion to dismiss, the sufficiency of the petition is construed liberally and all the facts properly pleaded are taken as true and are accorded every reasonable intendment as a valid statement of a claim. *Hall v. Smith*, 355 S.W.2d 52, 55 (Mo.1962). If the facts pleaded and the reasonable inferences to be drawn therefrom show any ground for relief, then the petition should not be dismissed. *Trotter v. Sirinek*, 515 S.W.2d 67, 68 (Mo.App.1974).

The fact that plaintiff might be compelled by motion to make more definite and certain, to plead more specifically, or the fact that plaintiffs might be compelled

by interrogatories to give more information does not mean that the petition does not state a cause of action in existing form. *Scheibel v. Hillis,* 531 S.W.2d 285, 290 (Mo. banc 1976).

We first address the issue of standing and find defendants' contention that neither the Greenings nor FLEC had standing to bring this action unpersuasive. In support of their contention defendants first argue that since the breach of contract arose during bankruptcy proceedings, and the trustee in bankruptcy did not pursue the issue, the plaintiffs are now in no position to assert the claim.

■ While rights of action arising upon the contracts or property of the bankrupt normally pass to the trustee, an interest in a contract for personal services which is executory on the date of the bankruptcy does not. *Stutts v. Waldrop,* 377 F.2d 275, 276 (5th Cir.1967); *Ford, Bacon & Davis, Inc. v. Holahan,* 311 F.2d 901, 902 (5th Cir. 1962), citing 4 *Collier on Bankruptcy,* § 370[3] (14th ed. 1922). Here both the Greenings individually and FLEC in its corporate capacity hired Klamen to exercise his personal skill and judgment in representing their interests, *See Ford, Bacon & Davis, Inc. v. Holahan,* 311 F.2d at 904. Accordingly, their right of action arising out of Klamen's alleged breach of contract did not vest in the trustee and we hold both FLEC and the Greenings had standing to assert this claim.

■ Secondly, Klamen maintains the Greenings' action is actually a stockholder's derivative suit and that their failure to allege sufficient facts showing they first made demand upon the directors and stockholders to take action, denies them standing to sue on the theories of contract, legal malpractice, and libel. *See* Rule 52.09 V.A. M.R. (1981); *Goodwin v. Goodwin,* 583 S.W.2d 599 (Mo.App.1979).

We disagree and first note that it would be useless and unnecessary for the Greenings who were the sole stockholders of the corporation to make such demand upon themselves. Secondly, we conclude that this is not a stockholder's derivative suit. The Greenings are maintaining this suit to seek a judicial determination of their own claims, and are not maintaining this action in their own name for a claim existing in the corporation itself. Again, the Greenings alleged in their petition that they paid Klamen a $4,000 retainer fee to represent their own individual interests in addition to those of FLEC.

While it is not clear from the face of the petition what the Greenings' individual interests were, it is not inconceivable, or legally impossible for them to have had interests other than those of mere stockholders. Accordingly, we find both parties had standing to bring this suit.

*Counts I and III*

■ We now look to Counts I and III wherein both the Greenings and FLEC alleged $504,000 and $500,000 respectively in actual damages for breach of contract. As said, both parties entered into an agreement whereby defendant agreed to represent both the Greenings' and FLEC's interests in the bankruptcy proceedings. Two months later Klamen refused to perform under the agreement regarding attorney's fees. We believe an attorney is bound by his contracts, and an agreement for attorneys fees between attorney and client should be construed under the same rules of construction as apply to any other contract. *Kramer v. Fallert,* 628 S.W.2d 671, 674 (Mo. App.1981). We find Klamen's refusal to perform under the agreement provides the plaintiffs with a cause of action for breach. Again, the fact that plaintiffs might be compelled to give more information does not mean that the petition does not state a cause of action in existing form. *Scheibel v. Hillis,* 531 S.W.2d at 290. Consequently, we find both Counts I and III state a claim upon which relief can be granted.

*Counts II and IV*

■ Both the Greenings and FLEC complain of the trial court's dismissal of Counts II and IV wherein they alleged punitive damages of $1,000,000 for each breach of contract action. It is well settled

that punitive damages are generally not awarded for breach of contract unless the breach amounts to an independent and willful tort and there are proper allegations of malice, wantonness or oppression. *Wallick v. First State Bank of Farmington*, 532 S.W.2d 520, 524 (Mo.App.1976). A review of the petition reveals plaintiffs pleaded only allegations of malice and wantonness, and failed to properly allege an independent and willful tort founded on the breach of contract. As a result, punitive damages are not recoverable, and Counts II and IV of the amended petition were properly dismissed.

### Counts V and VI

█ In Counts V and VI the Greenings individually brought suit for legal malpractice demanding actual damages of $1,000,000 in Count V and exemplary damages of $1,000,000 in Count VI. While the Greenings properly alleged an attorney-client relationship, they based the duty owed them on the negligent breach of Supreme Court Rule 4, Disciplinary Rules 5–103, 7–101, and 4–101[1] claiming these rules coincide with existing common law obligations or duties an attorney owes his client.

While courts do frequently look to these Disciplinary Rules in order to determine the duty owed a client, the Greenings cite no competent authority supporting the proposition that these rules provide a cause of action, and also neglect to specifically allege what common law obligations or duties were created by the attorney-client relationship and subsequently breached. The two cases set forth by plaintiffs are readily distinguishable as they were not negligence suits. Defendants cannot be held to have breached common law duties which were never pleaded.

We note that a violation of codes of ethics or professional responsibility, constitutes grounds for suspension or disbarment. The Code is designed to be adopted by appropriate agencies as a basis for disciplinary action. *State ex rel. Nebraska State Bar Association of Jenson*, 105 N.W.2d 459, 470 (Neb.1960); and, ABA Code of Professional Responsibility, Preliminary Statement, reprinted in R. Wise, *Legal Ethics* (2d ed. 1970). It is not our intention to limit the right of any individual to seek a remedy afforded by law. *See* Supreme Court Rule 5.27 V.A.M.R. (1981). However, we do decline to enlarge upon any common law obligations of competence and fiduciary obligation that may exist, by imposing liability for the alleged negligent breach of Disciplinary Rules. Consequently, we hold that the Disciplinary Rules alone do not form a basis for a cause of action in legal malpractice, and Counts V and VI of the amended petition were properly dismissed as to both defendants.

### Counts VII and VIII

In the last two counts of their petition the Greenings brought suit for libel claiming $1,000,000 in actual damages and $1,000,000 in exemplary damages. We disagree with Klamen's contention that the alleged libelous statements were privileged. Said statements were contained in a letter sent to parties in the suit, the judge, and to potential investors who were not parties to the action.

█ While pertinent matter in pleadings, motions, affidavits, and other papers filed in a civil case before a court having jurisdiction is generally absolutely privileged, though false and malicious, 11 U.S.C. § 44(i) (1976) of the bankruptcy code, does not extend this absolute privilege or any limited privileges to communications made to a non-party in a bankruptcy proceeding. *Haver v. Major*, 186 S.W.2d 564, 569 (Mo.1945).

However, we do find that the trial court correctly sustained the motions to dismiss

---

**1.** Disciplinary Rule 5–103 prohibits an attorney from acquiring a proprietary interest in the subject matter of the litigation.

Disciplinary Rule 7–101 requires an attorney to represent clients zealously.

Disciplinary Rule 4–101 concerns the preservation of the confidences and secrets of clients. Supreme Court Rule 4, Code of Professional Responsibility DR5–103; DR7–101; DR4–101, V.A.M.R. (1981).

because the alleged statements do not constitute libel as a matter of law.

Whether words are libelous per se or libelous per quod is a question of law which this court may properly decide. *Missouri Council of Scientology v. Adams,* 543 S.W.2d 776, 777 (Mo. banc 1976). To be actionable per se, the words must be defamatory on their face without the aid of extrinsic proof and viewed stripped of any pleaded innuendo. *Langworthy v. Pulitzer Publishing Co.,* 368 S.W.2d 385, 388 (Mo. 1963). Furthermore, where the plaintiff contends the language affected his business, words must directly tend to injure or prejudice his profession, trade, business, or employment by imputing want of knowledge, skill, capacity, or fitness to perform or discharge his duties thereof. *Heitzeberg v. Von Hoffmann Press, et al.,* 100 S.W. 2d 307, 309 (Mo.1937). They must also be defamatory of the plaintiff in the line of his trade or calling that they impute fraud, want of integrity or misconduct. *Stowers v. Western Bentley Mercantile Co.,* 140 S.W.2d 714, 715 (Mo.App.1940).

On its face, the letter written by Klamen is not libelous per se. Allegations of indecision and vacillation, are not words which impute fraud, want of integrity, or misconduct. Moreover, when words are not obviously defamatory, the plaintiff must allege facts from which it can be found that the words were used in a defamatory sense. *Brown v. Kitterman,* 443 S.W.2d 146, 154 (Mo.1969). The subject petition reveals the Greenings alleged no such facts. Finally, we find the Greenings' petition failed to state a cause of action for libel per quod as the petition did not allege special damages with definite particularity. *Anton v. St. Louis Suburban Newspapers, Inc., et al.,* 598 S.W.2d 493 (Mo.App.1980). Accordingly, Counts VII and VIII were properly dismissed.

The judgment is reversed and remanded as to Counts I and III and affirmed in all other respects.

SNYDER, P.J., and GAERTNER, J., concur.