James H. CONNELL, Karen Connell and Patrick J. Connell, d/b/a Connell Aviation, Plaintiffs–Appellants,

v.

Danny WHITELEY, Individually and as a Member of the Poplar Bluff Airport Advisory Board; The City of Poplar Bluff, Missouri; Ron Black; Calvin Rutledge; Ernie Richardson; Joe Sullivan; Mark Massingham; William Turner; and Mayor Robert P. MacDonald, Defendants,

and

Poplar Bluff Printing Company, Inc., d/b/a Daily American Republic Newspaper, Defendant–Respondent.

No. 16222.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 20, 1989.

Mark A. Kennedy, Kennedy & Kennedy, Poplar Bluff, for plaintiffs-appellants.

Daniel T. Moore, L. Joe Scott, Poplar Bluff, for defendant-respondent.

PREWITT, Judge.

The trial court dismissed Count II of plaintiffs' multicount petition and found, according to a statement by the Circuit Clerk's office, "that there is no jury [sic] reason for delay, (Rule 74.01b)." We conclude that this was a sufficient "determination that there is no just reason for delay",

to enter a judgment as to fewer than all the claims presented. Rule 74.01(b). The parties so treat it and we do likewise. This appeal therefore lies.

By amended petition plaintiffs alleged in Count II that they were fixed base operators operating under a contract with the city of Poplar Bluff at the Poplar Bluff Municipal Airport. A copy of a contract, attached to the petition, and made a part of it by reference, obligated plaintiffs, along with offering certain services, to "[k]eep all facilities leased free of trash, clean and in a presentable manner...."[1]

Plaintiffs claim they were libeled because defendant Poplar Bluff Printing Company, which publishes the Daily American Republic Newspaper, ran an article commenting upon a report made by the "Poplar Bluff Airport Advisory Board" which concerned plaintiffs' operation at the Poplar Bluff Airport.[2] The newspaper article stated that complaints against plaintiffs' operation included "allowing dogs to urinate on the floor of the terminal building". The report did not refer to dogs urinating but did state that a woman sent to the airport to "pick up" a United States Senator reported that while she was there for forty minutes, "[a] dog was wandering throughout the terminal, occasionally licking the woman's legs."

The trial court dismissed Count II "for failure to state a cause of action". Mo. Const. Art. I, § 8 provides that the jury, under the direction of the court, shall determine the law and facts in a suit for libel but nevertheless "a petition in which damages are sought for defamation by libel is subject to a motion to dismiss." *Coots v. Payton*, 365 Mo. 180, 280 S.W.2d 47, 51 (1955); *Swafford v. Miller*, 711 S.W.2d 211, 213 (Mo.App.1986).

■ In determining whether plaintiffs have stated a cause of action this court assumes every pleaded fact is true and takes every favorable inference in favor of

---

1. Some of the services plaintiffs contracted to provide were pilot training, on-site inspection by an authorized mechanic, multi-engine charter service, jet fuel, airplane rental, single-engine charter service and daily commercial freight service.

2. There is no contention that plaintiffs are public officials or public figures. See *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); 53 C.J.S. Libel and Slander § 44 (1987).

plaintiffs which may reasonably be drawn from the facts pleaded. *Schutte v. Sitton,* 729 S.W.2d 208, 209 (Mo.App.1987); *Greening v. Klamen,* 652 S.W.2d 730, 732 (Mo. App.1983). If the facts pleaded and the reasonable inferences to be drawn show any ground that would entitle plaintiffs to relief, the petition should not have been dismissed. *Greening,* 652 S.W.2d at 732.

■ The dispositive question here is whether plaintiffs stated a claim in libel per se because it defamed them in their occupation as fixed base operators. Whether words are libelous per se or per quod is a question of law which this court may properly decide. *Greening,* 652 S.W.2d at 735. See also M. Sableman, The Court's Role in Interpreting Language in Libel and Slander Cases, 45 J.Mo.Bar 399 (Sept. 1989).

■ Libel per se includes words directly tending to injure or prejudice one's profession, trade, business, or employment by imputing want of knowledge, skill, capacity, or fitness to perform or discharge the occupation's duties. *Greening,* 652 S.W.2d at 735.[3]

The Restatement (Second) of Torts § 573 states:

> One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, or of his public or private office, whether honorary or for profit, is subject to liability without proof of special harm.[4]

■ For an allegation of business misconduct to constitute libel per se it must allege incompetence in a way peculiarly harmful to one engaged in his trade; disparagement of a general character, discreditable to all persons, is not enough unless the particular quality disparaged is of a character that it is peculiarly valuable in plaintiff's occupation. *Swafford,* 711 S.W.2d at 215. See also *Brown v. Kitter-*

*man,* 443 S.W.2d 146, 154 (Mo.1969); *Jacobs v. Transcontinental & Western Air,* 358 Mo. 674, 216 S.W.2d 523, 526 (1948); *Arthur v. Jablonow,* 665 S.W.2d 364, 366 (Mo.App.1984); Annotation 53 A.L.R.2d 8, 69 (1957).

■ The newspaper article was regarding complaints of plaintiffs' operation at the Poplar Bluff Airport. The article treats the statement regarding dogs urinating as being adverse to their ability to properly operate there. If true, it would be. Using "allowing" is more than saying that the urinating occurred, it is saying that it might have been prevented by plaintiffs but was not. "Allow" is not a technical term. *Old Fortress, Inc. v. Myers,* 453 S.W.2d 692, 695 (Mo.App.1970). It means to "acquiesce" and implies knowledge or consent. *Id.*

Defendant–Respondent argues that these were not words that disparaged plaintiffs in their trade but would have the same effect on a person engaged in any occupation. We do not agree. Providing clean surroundings was part of the contract plaintiffs signed to care for the public buildings. It was a part of plaintiffs' duties to manage the buildings and keep them clean.[5] That would not be true of most other occupations. Allowing dogs to urinate would be "incompatible with the proper conduct" of a fixed base operator. See *Swafford,* 711 S.W.2d at 215. We conclude that the petition as amended stated a claim for libel per se.

The judgment is reversed and the cause remanded for further proceedings.

FLANIGAN, P.J., and MAUS, J., concur.

---

3. "The law of defamation has always stressed the pecuniary aspects of injury to reputation. It is to be expected, therefore, that special emphasis was placed on those defamatory charges the tendency of which was to interfere with one's livelihood." 2 Harper, *The Law of Torts,* § 5.12, p. 99 (1986).

4. Whether special harm was alleged by plaintiffs is a question raised but not reached.

5. We assume that such a responsibility is standard or at least not unusual for fixed base operators. At this stage of the proceedings we view this as a permissible inference from the pleadings.