Norman W. SWAFFORD,
Plaintiff-Appellant,

v.

Barney MILLER and Statesman Publishing Company, Incorporated, a Missouri corporation, Defendants-Respondents.

No. 14477.

Missouri Court of Appeals,
Southern District,
Division One.

June 3, 1986.

Dennis P. Wilson, Parsons, Mitchell & Wilson, P.C., Dexter, for plaintiff-appellant.

John Wm. Ringer, Powell, Ringer and Bischof, Dexter, for defendants-respondents.

FLANIGAN, Judge.

Plaintiff Norman Swafford, a professional photographer, brought this libel action against the defendants who are the publishers of the Daily Statesman, a newspaper "of large circulation published in Stoddard County." Defendants filed a motion to dismiss on the ground that the petition failed to state a claim upon which relief can be granted. The trial court sustained the motion. Plaintiff appeals.

The action arises out of the following article which appeared in the Daily Statesman on May 28, 1982:

"WE'RE SORRY BERNIE

To the students, parents and friends of the Bernie graduates, we are sorry that we were unable to obtain individual photos of the Bernie Seniors. This newspaper has for many years published the individual pictures from the Bernie school, the same as Dexter and Richland. In these instances, the Daily Statesman works with the photographer who takes the pictures, and in nearly all cases they have cooperated. For some reason Mr. Norman Swafford did not choose to furnish us with those individual pictures this year and for that we are sorry. We have published elsewhere in this edition a group picture of the Bernie graduates."

In addition to alleging the contents of the article and defendants' publication of it, the petition alleged:

"5. That Defendants were at fault in publishing such article in that said article was published intentionally with negligent and reckless disregard for the truth or for the purpose of injuring Plaintiff.

6. Plaintiff did not take the individual photographs of the Bernie Seniors in the year 1982, except for a small percentage of said Seniors. In fact, most of the Bernie Senior pictures for the year 1982, were taken by competitors of Plaintiff, and Defendants never inquired as to whether or not Plaintiff had taken such photographs.

7. That the published article referred to hereinabove tended to deprive the Plaintiff of the benefit of public confidence and trust and contained false and misleading statements.

8. That said article was read by the public and Plaintiff's reputation and business associations were thereby damaged.

9. Plaintiff is a professional photographer engaged in the business of photography including the photographing of high school students in Stoddard County, Missouri, and surrounding areas; and that the publication of said article caused Plaintiff to suffer substantial loss and damage to his business by stating and implying that Plaintiff did not cooperate

with the newspaper or his clientele in furnishing photographs of Seniors for newspaper publication, thereby defaming Plaintiff's professional reputation and causing him to lose customers and income in his business."

The prayer was for $50,000 for actual damages and $50,000 in punitive damages.

In his sole point plaintiff states that the allegations of the petition were sufficient to state a cause of action for libel and that the trial court erred in ruling otherwise. For the reasons which follow, this court holds that the petition was not sufficient to plead a cause of action in libel per se because the newspaper article was not defamatory of the plaintiff in his calling. This court also holds that the failure of the petition to contain a sufficient pleading of "special damages" makes it insufficient to state a cause of action in libel per quod.

■ Art. 1, § 8, V.A.M.S., Const. 1945, provides that the jury, under the direction of the court, shall determine the law and facts in suits for libel. Nevertheless "a petition in which damages are sought for defamation by libel is subject to a motion to dismiss." *Coots v. Payton,* 365 Mo. 180, 280 S.W.2d 47, 51[3] (1955). "[T]he function of a trial court and of an appellate court in determining the sufficiency of a petition setting forth a claim for damages for libel is necessarily limited to a determination of whether the communication set forth in the petition, together with matters of inducement and innuendo which may be there contained, is capable of a defamatory meaning. This function may require the court to determine whether the communication reasonably conveyed the meaning ascribed to it by plaintiff and, if so, whether that meaning was defamatory in character." *Coots v. Payton,* supra, at 51[3, 4].

■ "A writing claimed to be libelous must be interpreted from its four corners. It must be given its ordinary meaning in the plain and popular sense." *Jacobs v. Transcontinental & Western Air,* 358 Mo. 674, 216 S.W.2d 523, 525 (1948).

Libel was defined in § 559.410 RSMo. 1969 as follows: " 'A libel is the malicious defamation of a person made public by any printing, writing, sign, picture, representation or effigy tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse.' " Section 559.410 was repealed by Laws 1977, Senate Bill No. 60, Effective Jan. 1, 1979.

■ Prior to the repeal of § 559.410 the Supreme Court held, in *Coots v. Payton,* supra, 280 S.W.2d at 53, that the statutory definition of libel applied in both criminal and civil cases. See also *Hylsky v. Globe Democrat Pub. Co.,* 348 Mo. 83, 152 S.W.2d 119, 122[5, 6] (1941). "Any false, unprivileged, written communication which, reasonably construed, comes within the statutory definition is libelous per se." *Coots v. Payton,* supra, at 53[12].

■ The definition of libel, contained in the repealed statute, "is substantially the same as the definition of libel at common law." *Bello v. Random House, Inc.,* 422 S.W.2d 339, 340 (Mo.1967). This court has said that the definition in the repealed statute "is not different from the common-law definition." *Skelley v. St. Louis & S.F.R. Co.,* 176 Mo.App. 156, 161 S.W. 877 (1913). In *Kenworthy v. Journal Co.,* 117 Mo.App. 327, 93 S.W. 882, 885 (1906), the court said that the definition in the now repealed statute was "substantially the same" as the common law definition of libel and added, "The intent of the Legislature was to make all classes of libel misdemeanors and actionable per se, and not to make publications libelous other than at common law.... Such being the status of the law, it is immaterial whether we consider the main point in question [whether the plaintiff was included in the class of the persons defamed] from a standpoint of the statute or the common law." Accordingly, the language of the repealed statute remains an accurate definition of civil libel.

■ "There are two types of libel actions, libel per se and libel per quod." *An-*

ton v. St. Louis Suburban Newspapers, Inc., 598 S.W.2d 493, 496 (Mo.App.1980). In Langworthy v. Pulitzer Publishing Company, 368 S.W.2d 385 (Mo.1963), the court said:

"Words which are defamatory per se, that is, defamatory on their face without the aid of extrinsic proof, are actionable and the allegation in the petition of extrinsic facts in the form of what is referred to as the inducement and innuendo is not required in order to state a cause of action.... In such event the law presumes damages which may be alleged generally, ... and special damages need not be alleged although proof of actual damage may be made to support the presumption of injury and to show its extent.... A petition based on published words not defamatory per se may state a cause of action for what is referred to as libel per quod.... However, the petition must allege extrinsic facts which show that although the words published were not libel per se they were in fact defamatory, and it is the uniform rule in Missouri and elsewhere that in such situation special damages must be pleaded in order for the petition to state a cause of action." [1] (Authorities omitted.)

■ It is not sufficient, to constitute libel, that the writing "tends to provoke [plaintiff] to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse." The writing must indeed so "tend" but, in addition, it must be a "malicious defamation." Langworthy v. Pulitzer Publishing Company, supra, 368 S.W.2d at 389. Diener v. Star-Chronicle Pub. Co., 232 Mo. 416, 433, 135 S.W. 6, 11 (1911). As said in Diener:

"There must be defamation in a libelous sense before there can be a libel. * * To make a libel there must be defamation in the sense of the law, before the public scorn and contempt feature is operative. Defamation includes the idea of calumny, aspersion by lying; the injury of another's reputation in that way. To defame is to speak evil of one maliciously, to dishonor, to render infamous."

■ Does the language of the instant newspaper article constitute libel per se? In making this determination this court must ignore any pleaded innuendo. "Words which are libelous per se do not need an innuendo and, conversely, words which need an innuendo are not libelous per se." Langworthy v. Pulitzer Publishing Company, supra, 368 S.W.2d at 388–389. To similar effect see Thomson v. Kansas City Star Company, 387 S.W.2d 493, 496 (Mo.1965).

■ In general, the article is reasonably subject to the construction that plaintiff took individual photographs of the Bernie seniors, that "for some reason" he chose not to furnish the newspaper with the photographs, and that, in so doing, plaintiff failed to "cooperate" with the newspaper although other photographers [perhaps including plaintiff] so "cooperated" in prior

---

1. With respect to the words "inducement" and "innuendo," an authoritative text has stated:

"If the defamatory meaning arises only from facts not apparent upon the face of the publication, the plaintiff has the burden of pleading and proving such facts, by way of what is called 'inducement.' Likewise, he must establish the defamatory sense of the publication with reference to such facts, or the 'innuendo.'" Prosser and Keeton on Torts, Fifth Edition, § 111, p. 782.

Similarly, in Restatement, Torts 2d, § 563, comment f, it is said:

"Under common law pleading, in framing a declaration for defamation, when the defamatory meaning of the communication or its applicability to the plaintiff depended upon extrinsic circumstances, the pleader averred their existence in a prefatory statement called the 'inducement.' In what was ordinarily called the 'colloquium,' he alleged that the publication was made of and concerning the plaintiff and of and concerning the extrinsic circumstances. The communication he set forth verbatim and in the 'innuendo' explained the meaning of the words. The function of the innuendo was explanation; it could not change or enlarge the sense or meaning of the words. it could only explain or apply them in the light of the other averments in the declaration...."

Rule 55.20 V.A.M.R. permits colloquium to be pleaded generally.

years. Certainly the article does not accuse the plaintiff of any criminal act nor does it "dishonor" him or "render" him "infamous."

■ Does the article defame the plaintiff in his calling as a photographer? In *Jacobs v. Transcontinental & Western Air*, 358 Mo. 674, 216 S.W.2d 523, 525 (1948), the court said:

> "False words tending to injure a person in his profession, trade or employment are ordinarily actionable, and sustain a recovery of money damages. We have expressed the rule in these words: 'The publication of false statements or language, whether written or oral, which directly tend to prejudice or injure a person in his profession, trade, business, or employment, by imputing to him a want of knowledge, skill, capacity, or fitness to perform or discharge the duties thereof, is actionable per se.' *Heitzeberg v. Von Hoffmann Press*, 340 Mo. 265, 100 S.W.2d 307, 309. In a much earlier case we pointed out that words to be actionable per se must be such, if true, as would disqualify a person or render him less fit properly to fulfill the duties incident to the special character he has assumed. Words to be actionable as disparaging a person in his calling must touch him in his office, profession or trade. They must impeach either his skill or knowledge, or his official or professional conduct. We said that every false charge is not libelous but must come within the definition. *Legg v. Dunleavy*, 80 Mo. 558, 50 Am.Rep. 512. It is stated in the Restatement of Torts, § 573, that for defamation of a person in his trade the disparaging words to be actionable per se must affect the plaintiff in some way which is peculiarly harmful to one engaged in his trade. 'Disparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession.' "

In *Jacobs*, a writing charging that plaintiff, a polisher of airplanes, neglected his duties and interfered with other employees in the performance of their duties by loitering in the hallway was held not to be libel per se. The writing "did not impute to plaintiff a want of knowledge, skill, capacity or fitness to perform the duties of an airplane polisher or mechanic which he claims as his trade. The [writing] did not touch on plaintiff's qualifications or ability to perform his work." *Jacobs* 216 S.W.2d at 526.

The foregoing principles, which govern the determination of whether a person has been libeled in his calling, were invoked in *Brown v. Kitterman*, 443 S.W.2d 146 (Mo. 1969), *Coots v. Payton*, supra, and *Anton v. St. Louis Suburban Newspapers, Inc.*, 598 S.W.2d 493 (Mo.App.1980). In *Brown*, a writing critical of the operation of a community center did not defame plaintiff although plaintiff was the manager of the center and owned the building in which it was located. In *Coots*, a newspaper article critical of the attire of a city marshal was not defamatory. In *Anton* a newspaper article could be interpreted to imply that the plaintiff, an attorney, participated in threats and acts of vandalism. The court said, at p. 497, "Such conduct, if true, would be incompatible with the proper conduct of a lawyer. We thus conclude that plaintiff's petition alleges a claim in libel per se."

The instant newspaper article did not impute to plaintiff "a want of knowledge, skill, capacity, or fitness to perform or discharge the duties" of a professional photographer. The article does not "touch him in his trade." It does not "impeach his professional conduct." The article does not "affect the plaintiff in some way which is peculiarly harmful to one engaged in his trade." *Jacobs v. Transcontinental & Western Air*, supra.

■ The article may well imply that plaintiff may have been unreasonable or obstinate or "noncooperative" in not furnishing the photographs. "It is not sufficient, standing alone, that the language is

unpleasant and annoys or irks plaintiff, and subjects him to jests or banter, so as to affect his feelings." *Coots v. Payton,* supra, 280 S.W.2d at 54. The article contains no statement that it was incumbent upon plaintiff, as a matter of professional duty, to furnish the photographs to the newspaper. The article may strike at his behavior but it does not strike at his professional competence. This court holds that the article was not defamatory to the plaintiff in his calling and did not constitute libel per se.

Does the petition state a claim in libel per quod? The excellent brief of defendants-respondents challenges the sufficiency of the petition with respect to inducement and innuendo and also asserts that the petition fails to allege "any special damages with particularity." The validity of the latter assertion makes it unnecessary to consider the validity of defendants' other challenges.

■■■ "Special damages must be pleaded in order for the petition to state a cause of action [in libel per quod]." *Brown v. Kitterman,* supra, at 149; *Hellesen v. Knaus Truck Lines,* 370 S.W.2d 341, 343 (Mo. 1963); *Greening v. Klamen,* 652 S.W.2d 730, 735[19] (Mo.App.1983).

Rule 55.19 V.A.M.R. states in pertinent part: "When items of special damage are claimed, they shall be specifically stated." Rule 9(g), Fed.R.Civ.Proc. contains the identical language.

There appears to be a paucity of Missouri appellate decisions setting forth the criteria for determining the sufficiency of allegations of special damages in libel per quod. See 86 A.L.R. 848 (Sufficiency of allegations of loss of patronage or profits to permit recovery of special damages from false publication). The issue was addressed in *Fairyland Amusement Company v. Metromedia, Inc.,* 413 F.Supp. 1290 (W.D.Mo.1976), an opinion written by District Judge John W. Oliver.

In *Fairyland,* a defamation action, the complaint was held insufficient to state a cause of action in libel per quod because plaintiffs failed to allege special damages with the specificity required by Federal Rule 9(g). Plaintiffs were the owners and operators of an amusement park and also individual concessionaires at the park. They alleged that they were defamed by matter broadcast by the defendant, operator of a television station. The complaint alleged that because of the nature of plaintiffs' business "plaintiffs do not have the need or necessity to know the names of their individual customers at Fairyland Park and do not, in fact, know the names of their individual customers at Fairyland Park and cannot, therefore, allege the names of the particular customers who have withheld their patronage as a result of said defamation." The complaint then attempted to set forth a special damage claim on the basis of comparative sales of each plaintiff. Plaintiffs pleaded, with specific figures, that their gross sales for the three months following May 31, 1973, the date of the alleged defamation, were less than their gross sales during the same period in 1972.

At p. 1292 Judge Oliver said:

"Both sides recognize that *Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories,* [17 F.2d 255, 261 (8th Cir. 1926)], correctly states the applicable law, both in this Circuit and in Missouri. The parties differ, however, in their application of the special damage criteria set forth in that case. The specific criteria are stated in the following language:

'It was therefore necessary for the plaintiff to allege either the loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication. If the plaintiff desired to predicate its right to recover damages upon general loss of custom, it should have alleged facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication, and facts

showing that plaintiff could not allege the names of particular customers who withdrew or withheld their custom.' [17 F.2d at 261]."

Judge Oliver stated that the complaint did not allege any "facts showing that plaintiff could not allege the names of particular customers who withdrew or withheld their custom." He then stated:

"Moreover, even assuming that plaintiffs have alleged facts sufficient to allow them to prove mere loss of business generally, they have wholly failed to allege any 'facts showing that such loss in sales were the natural and probable result of such publication.' Plaintiffs merely assert that 'other than the defamation of which plaintiffs complain, there existed no factors or circumstances giving rise or contributing to loss of sales during June, July and August of 1973, which were not also present during June, July, and August of 1972.' We find and conclude that this allegation is clearly insufficient under Erick Bowman Remedy Co., supra. No facts were alleged which would tend to support plaintiffs' claim that the loss in business was a direct result of defendant's Probe Report referring to Fairyland Park." (Citing authorities.)

The instant petition fails to allege "the loss of particular customers by name." Even if it be assumed that it alleges "a general diminution in [plaintiffs'] business," it does not allege "extrinsic facts showing that such special damages were the natural and direct result of the false publication." It does not state "the amount of sales for a substantial period preceding the publication" or "the amount of sales subsequent to the publication." It contains no "facts showing that such loss in sales were the natural and probable result of such publication," and it contains no "facts showing that plaintiff could not allege the names of particular customers who withdrew or withheld their custom."

The judgment is affirmed.

TITUS, P.J., and GREENE, J., concur.