Earl W. CAREY, Appellant,

v.

The PULITZER PUBLISHING
COMPANY, Respondent.

No. 63132.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 20, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 26, 1993.

Earl W. Carey, pro se.

Joseph E. Martineau, Ronald A. Norwood, Yvette M. Guerra, St. Louis, for respondent.

STEPHAN, Judge.

Earl W. Carey ("Carey") appeals from a trial court order which dismissed his defamation suit against The Pulitzer Publishing Company ("Pulitzer") on the basis that: (1) certain portions of his petition fail to state a claim upon which relief can be granted; and (2) other portions of his petition fail to allege the specific statements which he claims defamed him. We affirm.

Carey is a resident of St. Louis County, Missouri. In 1992, he sought the Democratic nomination for the United States Senate seat held by Republican Christopher J. Bond. Carey is the author of *IBM and the Corruption of Justice in America*. According to his petition, this book "exposes the Carey–Gate scandal and describes Carey's political ideology. The Carey–Gate scandal includes but is not limited to federal judges committing explicit criminal violations of the law, and covering up said offenses with the full knowledge and blessing of the Department of Justice and Congress. Carey–Gate has been described as the 'American Auschwitz'."

Pulitzer is a Missouri corporation having its principal place of business in the City of St. Louis. Pulitzer is the owner and publisher of the *St. Louis Post–Dispatch*. All publication of the *St. Louis Post–Dispatch* emanates from the City of St. Louis.

On August 3, 1992, Carey filed a petition in the Circuit Court of St. Louis County against Pulitzer alleging libel arising out of six separate *St. Louis Post–Dispatch* articles. Carey outlined his complaints of defamation in paragraphs twenty-five through thirty. Those paragraphs state:

25. On February 14, 1992, the Post–Dispatch published a libelous article which stated:

'Earl Carey of Spanish Lake has joined the growing group of Democrats seeking nomination to run for the Senate seat held by Sen. Christopher S. Bond, R–Mo.

Carey, 43 says he will focus on his four-year legal battle with IBM, which he says fired him in 1988 after he worked 15 years as a salesman. Carey says that federal agencies and officials, including Bond, would not help in his fight.

Since losing his job, Carey says, he has been living off his investments. He filed Tuesday in Jefferson City, the ninth Democrat to file for the seat.'

26. On February 15, 1992, the Post–Dispatch published the following libelous article:

'Earl Carey, who has filed for the Democratic nomination for the U.S. Senate, says a story Friday incorrectly stated his campaign agenda. Carey says part of his campaign is based on his contention that federal officials are tolerating judicial misconduct.'

27. On March 18, 1992, the Post–Dispatch published a libelous article which stated among other lies that Carey had attacked Senator Bond on labor at the political forum hosted by the St. Louis Labor Council the previous day.

28. On July 26, 1992, the Post–Dispatch published a libelous article which stated:

'Earl Carey—He is running because of a dispute with IBM over his firing as a computer salesman in 1988. Carey, 43, lives in Spanish Lake.'

29. On August 2, 1992, the Post–Dispatch published a libelous article which stated among other lies that Carey had filed misconduct complaints against federal judges for dismissing his claim that IBM had no good cause to fire him.

30. On August 3, 1992, the Post–Dispatch published a libelous article which stated among other lies that Carey contends that federal judges have protected each other in ruling against him, and Bond failed to help him.

Service of process upon Pulitzer was directed to and secured within the City of St. Louis. In response, Pulitzer filed a motion to dismiss for improper venue. On September 25, 1992, the Circuit Court for St. Louis County treated Pulitzer's motion to dismiss

as a motion to transfer under § 476.410, RSMo.Cum.Supp.1992. It, therefore, entered an order transferring the cause to the Circuit Court for the City of St. Louis.

Shortly thereafter, Pulitzer filed a motion to dismiss Carey's petition, pursuant to Rule 55.27(a)(6), for failure to state a cause of action. Pulitzer argued that paragraphs 27, 29 and 30 fail to state a cause of action upon which relief may be granted because Carey merely summarized and paraphrased the statements which he deemed libelous. With respect to paragraphs 25, 26 and 28, Pulitzer alleged that these quoted statements are not libelous as a matter of law.

On November 18, 1992, the trial court entered an order sustaining Pulitzer's motion to dismiss. The trial court found: (1) Carey's petition, to the extent that it was based upon the articles alleged in paragraphs 25, 26 and 28, was dismissed with prejudice for failure to state a claim for the reason that the complained-about statements are not defamatory as a matter of law; and (2) Carey's petition, to the extent that it was based upon the articles alleged in paragraphs 27, 29 and 30 was dismissed without prejudice since said paragraphs fail to allege the specific statements which he claims defamed him. The trial court granted Carey 20 days to replead to allege specific statements in these paragraphs. Carey, however, failed to replead. Rather, Carey filed his notice of appeal.

 Carey's first point is that the trial court erred in transferring his case to the City of St. Louis. Specifically, Carey argues that, pursuant to § 508.010(6), venue in a libel cause of action is determined by the place of first publication. Carey further argues that the legal acid test for publication is circulation. Carey posits that, based upon the electronic journalism capabilities of the *St. Louis Post–Dispatch*, St. Louis County is the first place of publication. He concludes, therefore, that venue is proper in St. Louis County.

At the outset, we note Pulitzer argues that Carey improperly seeks review of the transfer of his case because his exclusive remedy was an extraordinary writ of man-

damus or prohibition directed to the transferring court. Pulitzer cites *State ex rel. Hune v. Ryan*, 771 S.W.2d 831, 832 (Mo. banc 1989); *State ex rel. Vaughn v. Koehr*, 835 S.W.2d 543, 544 (Mo.App.1992); *State ex rel. Steinhorn v. Forder*, 792 S.W.2d 51, 53 (Mo.App.1990); and *State ex rel. Allen v. Barker*, 581 S.W.2d 818, 824 (Mo. banc 1979).

■ Our review of those cases reveals that although a writ of mandamus or prohibition may be *an* appropriate remedy to correct or avoid improper venue, neither is an exclusive remedy for such a problem. Thus, Carey is not now barred from challenging the transfer of this case. Carey's challenge, however, fails. Section 508.-010(6), RSMo.1986, provides in pertinent part:

> [i]n all tort actions the suit may be brought in the county where the cause of action accrued regardless of the residence of the parties, and process therein shall be issued by the court of such county and may be served in any county within the state; provided, however, that in any action for defamation or for invasion of privacy the cause of action shall be deemed to have accrued in the county in which the defamation or invasion was first published.

Under this statute, proper venue lies in the county where the cause of action accrued. In an action for defamation, the cause of action accrues in the county in which the defamation was first published. *Finnegan v. Squire Publishers, Inc.*, 765 S.W.2d 703, 705 (Mo.App.1989).

The *St. Louis Post–Dispatch* is prepared, edited, disseminated and, therefore, published, from Pulitzer's facilities which are located in St. Louis City. Thus, venue against the *St. Louis Post–Dispatch* for libel lies in the City of St. Louis.

We note that Carey contends that in a widely distributed publication, many counties can qualify as the place of first publication. We, however, have repeatedly held that the cause of action for libel can only accrue in one county—the county where the newspaper was first issued. *See Finnegan v. Squire Publishers, Inc.*, 765

S.W.2d 703, 705 (Mo.App.1989) citing *Litzinger v. Pulitzer Publishing Co.*, 356 S.W.2d 81, 85 (Mo.1962). Carey's contention, therefore, has no merit.

■ Carey's second point is that the trial court erred in dismissing his petition for failure to state a cause of action upon which relief can be granted. At the outset, we note that the substance of Carey's point addresses the allegations that he raised in paragraphs 25 through 30 of his petition. Although technically the trial court dismissed paragraphs 27, 29 and 30 because Carey failed to allege the specific statements which he claims defamed him, the trial court granted Carey leave to file an amended petition seeking to cure the deficiencies in his pleading. Carey, however, chose to stand on the pleadings that he originally filed. By so doing, Carey treats the trial court's order as a final adjudication of his claims. *Cockrell v. Pleasant Valley Baptist Church*, 762 S.W.2d 879, 880 (Mo.App.1989). Thus, the dismissal of paragraphs 27, 29 and 30 was converted into a dismissal of said paragraphs for failure to state a cause of action upon which relief can be granted.

■ Initially, we address the dismissal of paragraphs 27, 29 and 30. It is required that in actions of libel and slander that the petition set forth the words, statements or language for which the plaintiff claims damages. *Dillard Dept. Stores, Inc. v. Muegler*, 775 S.W.2d 179, 184 (Mo.App. 1989). It is not sufficient to generally allege false and allegedly untruthful reports reflecting upon the plaintiff's reputation or integrity. *Id.* Petitions which do not specifically allege those statements claimed to be libelous are subject to dismissal for failure to state a claim on which relief may be granted. *Shurn v. Monteleone*, 769 S.W.2d 188, 191 (Mo.App.1989).

Here, in paragraphs 27, 29 and 30, which we set forth above, Carey failed to present the allegedly libelous words with particularity which he claims defamed him. His summarizations are simply insufficient to support a claim for libel. The trial court, therefore, properly determined that Car-

ey's petition, to the extent that it is based upon these paragraphs, was insufficient. Moreover, since Carey failed to replead the specific statements which he alleges defamed him, these paragraphs are dismissed with prejudice for failure to state a claim upon which relief can be granted.

■ We turn now to Carey's allegation that the trial court erred in dismissing his petition, to the extent that it is based upon the articles alleged in paragraphs 25, 26 and 28, for failure to state a claim upon which relief may be granted. The function of both trial and appellate courts in determining the sufficiency of a petition setting forth a claim of damages for libel is necessarily limited to determining whether the communication set forth in the petition, together with the matters of inducement and innuendo which may therein be contained, is capable of a defamatory meaning. *Coots v. Payton*, 365 Mo. 180, 280 S.W.2d 47, 51 (1955). This function may require the court to determine whether the communication reasonably conveyed the meaning ascribed to it by plaintiff and, if so, whether the meaning was defamatory in character. *Id.*

■ In order to be libelous per se, the defamatory words must be of such a nature that the court can presume, as a matter of law, that they will tend to disgrace and degrade the person or hold him to public hatred, contempt, or ridicule or cause him to be shunned and avoided; in other words, they must reflect on his integrity, his character and his good name and standing in the community and tend to expose him to public hatred, contempt or disgrace. *Id.*, 280 S.W.2d at 53–54. It is insufficient that the language is unpleasant and annoys or irks plaintiff, and subjects him to jest or banter, so as to affect his feelings. *Id.* To be actionable per se, the words must be defamatory on their face without the aid of extrinsic proof and viewed stripped of any pleaded innuendo. *Greening v. Klamen*, 652 S.W.2d 730, 735 (Mo.App.1983). Furthermore, where the plaintiff contends that the language affected his business, words must directly tend to injure or prejudice his profession, trade,

business, or employment by imputing want of knowledge, skill, capacity, or fitness to perform or discharge his duties thereof. *Id.* They must also be defamatory of the plaintiff in the line of his trade or calling so that they impute fraud, want of integrity or misconduct. *Id.* Whether words are libelous per se is a question of law which this court may properly decide. *Id.*

■ Review of paragraphs 25, 26 and 28 indicates that these articles are not libel per se. Paragraph 25 states that Carey: "would focus on his four-year legal battle with IBM, which he says fired him in 1988 after he worked 15 years as a salesman." In Carey's petition, he admits that he filed suit against IBM for fraud, breach of contract and intentional infliction of emotional distress. Paragraph 25 also states: "Carey says that federal agencies and officials, including Bond, would not help in his fight." In Carey's petition, he admits he attacked Bond on his culpability in the Carey–Gate scandal. Finally, paragraph 25 says: "[s]ince losing his job, Carey says, he has been living off his investments." The fact that an individual has accumulated enough wealth to maintain a comfortable standard of living is not itself defamatory. Rather than reflecting negatively on a person's integrity, character, good name and standing in the community and exposing Carey to public hatred, contempt or disgrace, accumulated capital is revered by many as a prudent and logical plan for one's future. Since the words in paragraph 25 do not impute want of knowledge, skill or capacity or fitness to perform or discharge the duties of a United States Senator, nor do they impute fraud, want of integrity or misconduct, this paragraph is not libelous per se.

Paragraph 26 states: "part of his campaign is based on his contention that federal officials are tolerating judicial misconduct." In his petition, Carey states that he is the author of a book entitled *IBM and the Corruption of Justice in America*. Carey further states that the Carey–Gate scandal includes but is not limited to federal judges committing explicit criminal violations of the law, and covering up said of-

fenses with the full knowledge and blessing of the Department of Justice and Congress. Although Carey states that he has never filed a misconduct complaint based on a ruling by a judge, he admits that he filed nine judicial misconduct complaints based on federal judges committing explicit criminal violations of the law. These facts indicate that Carey's contention that the *St. Louis Post–Dispatch's* information was false is suspect. Moreover, these printed words do not reflect on Carey's integrity, his character, and his good name and standing in the community nor do they tend to expose him to public hatred, contempt or disgrace. Since the words in paragraph 26 do not impute want of knowledge, skill, capacity, or fitness to perform or discharge the duties of a United States Senator, nor do they impute fraud, want of integrity or misconduct, they are not libelous per se.

Finally, paragraph 28 states that Carey: "is running because of a dispute with IBM over his firing as a computer salesman in 1988." Although Carey contends that he never told anyone at the *St. Louis Post–Dispatch* that his campaign for the U.S. Senate was based on his termination from IBM, as we have previously stated, Carey did file suit against IBM for fraud, breach of contract and intentional infliction of emotional distress. Whether or not Carey decided to run for the United States Senate based on his suit with IBM, this fact alone does not reflect on Carey's integrity, character, good name or standing in the community, nor does it tend to expose him to public hatred, contempt or disgrace. Moreover, since these words do not impute want of knowledge, skill, capacity, or fitness to perform or discharge his duties of a United States Senator nor do they impute fraud, want of integrity or misconduct, they are not libelous per se. In summary, the trial court did not err in determining that paragraphs 25, 26 and 28 should be dismissed because they fail to state a cause of action for libel per se.

■■■■ Moreover, these paragraphs fail to state a cause of action for libel per quod. In a libel per quod case, the petition must allege extrinsic facts which show that

although the words that were published were not libelous per se, they were in fact defamatory. *Swafford v. Miller,* 711 S.W.2d 211, 214 (Mo.App.1986). Whether words are libelous per quod is a question of law which this court may properly decide. *Greening v. Klamen,* 652 S.W.2d at 735. In all libel per quod cases, special damages must be pleaded in order for the petition to state a cause of action. *Swafford v. Miller,* 711 S.W.2d at 214.

■■■■ Here, Pulitzer concedes that Carey's petition is replete with pleaded innuendo. Pulitzer, however, argues that Carey fails to plead the requisite special damages. Rule 55.19 states: "[w]hen items of special damage are claimed, they shall be specifically stated." However, there seems to be "a paucity of Missouri appellate decisions setting forth the criteria for determining the sufficiency of allegations of special damages in libel per quod." *Swafford v. Miller,* 711 S.W.2d at 216.

In *Swafford,* the court faced a situation in which a photographer sued a rural newspaper after the paper published an article apologizing for the paper's failure to feature the individual pictures of members of a local high school graduation class. 711 S.W.2d at 212. The newspaper attributed its omission to the plaintiff photographer's decision not to furnish the pictures to the paper. *Id.* In grappling with the issue of the sufficiency of plaintiff photographer's petition for a claim in libel per quod, the court concentrated on whether the petition alleged special damages with particularity. *Id.* The *Swafford* court concluded as follows:

> The instant petition fails to allege 'the loss of particular customers by name.' Even if it be assumed that it alleges 'a general diminution in [plaintiffs'] business,' it does not allege 'extrinsic facts showing that such special damages were the natural and direct result of the false publication.' It does not state 'the amount of sales for a substantial period preceding the publication' or 'the amount of sales subsequent to the publication.' It contains no 'facts showing that such loss in sales were the natural and proba-

ble result of such publication,' and it contains no 'facts showing that plaintiff could not allege the names of particular customers who withdrew or withheld their custom.'

*Id.* at 217. (*quoting Fairyland Amusement Co. v. Metromedia, Inc.*, 413 F.Supp. 1290, 1292–93 (W.D.Mo.1976)).

We, similarly, apply this analysis to the facts of our case. Here, Carey argues that he has sustained specific damages to his career as an author. He states that his reputation and credibility in the eyes of the book-buying public, members of the print and electronic media, book reviewers, publishers, other authors, bookstores and colleges and universities, among others, have been severely diminished. He further states that he lost sales and has suffered adverse publicity surrounding his career as an author. Carey, however, fails to allege the loss of any particular customer by name. Even if it be assumed that the petition alleges a general diminution in his business, it does not allege extrinsic facts showing that such special damages were the natural and direct result of the false publication. It does not state the amount of sales for a substantial period of time preceding the publication or the amount of sales subsequent to the publication. It contains no facts showing that such loss in sales was the natural and probable result of such publication and it contains no facts showing that he could not allege the names of particular customers who withdrew or withheld their patronage. This claim of special damages has no merit.

Moreover, we apply the above-enunciated principles to Carey's claim that he has sustained specific damages to his political career. Such application reveals that it was necessary to allege either the loss of particular voters by name, or a general diminution in the polls, and extrinsic facts showing that such special damages were the natural and direct result of the false publication. If Carey desired to predicate his right to recover damages upon general loss of voters, he should have alleged facts showing an established standing in the polls, his standing in the polls for a sub-stantial period of time preceding the alleged defamatory articles, his standing in the polls subsequent to the publication of the articles, facts showing that such loss in voter support was the natural and probable result of such publication and facts showing that he could not allege the names of particular voters who withheld their vote.

Here, Carey's petition states that he suffered lost salary and lost opportunity from the position of United States Senator. It, however, fails to allege the loss of any voter by name. Even if it be assumed that the petition alleges a general diminution in standing in the polls, it does not allege extrinsic facts showing that such special damages were the natural and direct result of the false publication. It does not state his standing in the polls for a substantial period of time preceding the publication or any downward trend in the polls as a result of the articles. It contains no facts showing a loss of voter support was the natural and probable result of such publication. It contains no facts showing that plaintiff could not allege the names of particular voters who withdrew or withheld their support. The petition, simply, fails to plead special damages. The trial court, therefore, did not err in dismissing Carey's petition, with regard to paragraphs 25, 26 and 28, for failure to state a claim upon which relief could be granted.

Carey's third point is that the trial court erred by not reading the petition, not accepting the pleaded facts as true, and not according him all fair inferences from the pleaded facts. Carey states:

[i]n determining if a claim upon which relief can be granted has been pleaded, the court must admit as true the facts in a plaintiff's petition, and must give the plaintiff all fair inferences to facts pleaded. If the petition alleges and invokes substantive law which may entitle the plaintiff to relief, motion to dismiss is not to be granted. These fundamental principles of law, which the Missouri Court of Appeals has repeatedly and wholeheartedly endorsed, were completely ignored in the dismissal of Carey's cause of action.

Carey, thereafter, sets forth relevant citations for this argument. Finally, Carey states that his: "petition pleads extrinsic facts and invokes principles of substantive law entitling [him] to relief. Unequivocally, the Petition should not have been dismissed. This Court has the clear mandate to reverse the trial court's error."

Carey's third point offers no evidence to suggest that the trial court did anything improper in ruling on defendant's motion to dismiss. A thorough reading of the brief indicates that in the facts section, Carey did argue that: (1) on the hearing date, "numerous motions were turned over like double plays;" (2) the arguments lasted only a matter of minutes; (3) the matters were not recorded; (4) the trial court did not have Carey's case file before it; (5) the court refused to read Carey's petition and his brief in opposition to Pulitzer's motion for dismissal; (6) the order dismissing Carey's petition is in the handwriting of Pulitzer's attorney; (7) the order makes false statements regarding the court's review of the pleadings and file in this matter; and (8) Carey's petition was dismissed without the Court ever reading the order of dismissal or any of Carey's supporting briefs.

These allegations are not supported by the record. The trial court's order notes that the disposition of the motion was based upon a review of "the motion and all pleadings on file and after hearing argument and being fully advised in the premises." We presume that all judges faithfully carry out the duties of their office. *Houston v. Hennessey*, 534 S.W.2d 52, 55 (Mo. App.1975).

Moreover, it is standard procedure for several motions to be scheduled on the docket. It is typical for the presentation of each motion to last only a few minutes. Although the court file was apparently unavailable on the date of the hearing, the court reviewed Pulitzer's attorney's pleadings file which included a copy of Carey's petition. Carey, in fact, concedes this in his brief. Furthermore, the fact that the order is in Pulitzer's attorney's handwriting is irrelevant. It is common practice for an attorney to draft an order for a judge to sign.

Carey quite simply has failed to support his allegation that the court below failed to carry out its duties or committed any due process violations.

For these reasons, the trial court's judgment is affirmed.

GARY M. GAERTNER, C.J., concurs.

SMITH, J., concurs in result.